**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID F. KALETA,** | : | **Civil No. 4:12-CV-1987** |
| | : | |
| **Plaintiff** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **VINNY CLAUSI,** | : | |
| **STEPHEN BRIDY and** | : | |
| **COUNTY OF** | : | |
| **NORTHUMBERLAND,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Now pending in this action is the defendants' motion to disqualify the plaintiff's lawyers from representing him in this action, based upon asserted violations of the Pennsylvania Rules of Professional Conduct.  The motion has been fully briefed, and a hearing was held on the motion on February 5, 2013.  For the reasons that follow, the motion will be denied.

## II.   BACKGROUND AND STATEMENT OF THE CASE

### A.   Overview of the Plaintiff's Claims in this Litigation

The plaintiff in this action, David Kaleta, initiated the above-captioned litigation against Northumberland County (the "County") and two of its Commissioners, Vincent Clausi and Stephen Bridy, on September 17, 2012, in the

Northumberland County Court of Common Pleas. After the plaintiff prevailed on a motion for preliminary injunctive relief before the Court of Common Pleas, the defendants retained new counsel, who on October 3, 2012, promptly moved to remove the action to this court pursuant to 28 U.S.C. §§ 1441 and 1331. (Doc. 1.)

In a nutshell, the plaintiff's complaint alleges that the defendants violated the First Amendment of the United States Constitution, and Pennsylvania's Sunshine Act, when they flatly denied his request to access a 6,500 acre area known as the Anthracite Outdoor Adventure Area ("AOAA"), which the County Commissioners are in the process of developing into a recreational park. The AOAA is an area of land that has been used for years by off-road vehicle enthusiasts and other individuals, after being largely abandoned by the coal mining industry. The plaintiff has been actively involved for more than a decade in efforts to enhance the area environmentally, through planting over 40,000 trees, and working to develop wildlife habitats. The plaintiff has received public recognition and commendation for his efforts, including being granted a statewide award. During this time, the plaintiff appears also to have regularly accessed the land that makes up the AOAA.

In July 2011, the plaintiff executed a waiver of liability form that was requested by the County's Planning Department head, Patrick Mack, in order to lawfully access the AOAA. After signing this waiver, the plaintiff continued regularly to access the

AOAA land, while at the same time he became increasingly vocal in various forums about the approach that the County was taking with respect to the development of the AOAA. According to Mack, the plaintiff's public statements created a tense relationship between the plaintiff and the County, and with the Chairman of the Board of Commissioners, Vinny Clausi.

The following summer, in August 2012, it appears that these tensions between the plaintiff and some County representatives came to a head. During this time, the plaintiff submitted another waiver form for individual access to the AOAA, which was provided to Patrick Mack, the Planning Department head. Mack consulted with Commissioner Clausi about the plaintiff's request to access the AOAA, and the decision was thereafter made to deny the plaintiff's request. A letter from Mack to the plaintiff represented that two of the County's three Commissioners had decided not to accept the plaintiff's waiver, thereby effectively preventing the plaintiff from accessing and using the AOAA, as he had done previously.

The plaintiff claims in this lawsuit that the County's actions entirely to deny his request to access the AOAA, through two of its Commissioners, in private, violated Pennsylvania's Sunshine Act, 65 Pa. Cons. Stat. Ann. §§ 701 et seq., which generally guarantees the right of the public to be present at meetings of government agencies, and "to witness the deliberation, policy formulation and decisionmaking of

agencies" which is deemed "vital to the enhancement and proper functioning of the democratic process . . . ." 65 Pa. Cons. Stat. Ann. § 702(a). The Act further establishes the public policy of the Commonwealth to ensure the right of citizens to have notice of and the right to attend meetings of agencies at which agency business is discussed or acted upon. Id. § 702(b). In order to implement these overarching policies, the Act requires that "[o]fficial actions and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public . . . ." Id. § 704. In this case, the plaintiff contends that the defendants violated the Sunshine Act by undertaking official County action or business – namely, considering and denying his request for access to the AOAA – in private and outside of a public meeting.

The plaintiff also claims that the County's actions, through two of its three Commissioners, constituted violations of the First Amendment, both as a prior restraint on public speech, and as retaliation for the plaintiff's exercise of protected First Amendment activity through his public criticism of the Commissioners.

Now pending in this action is the defendants' motion for entry of an order disqualifying the plaintiff's lawyers, Kymberly L. Best and David A. Bowers, from representing the plaintiff in this action, on the grounds that counsel were formerly employed by Northumberland County in legal and administrative capacities, and represented the county in litigation and other legal matters, including early matters

4

involving the creation of the AOAA, thereby giving rise to an impermissible conflict of interest in the instant lawsuit. The defendants claim that counsel's representation of Kaleta runs afoul of Rules 1.6, 1.9, and 1.11 of the Pennsylvania Rules of Professional Conduct, and requires disqualification.

For their part, the plaintiff's counsel maintain that the cited rules of professional conduct are inapplicable to the situation presented in this case, and argue further that there is no basis for disqualification under the facts of this case, which involve claims for conduct that occurred long after counsel ceased working for the County, events that are temporally and topically far removed from the events at issue in this lawsuit, and which in no way can be considered to be substantially related to the legal services the lawyers rendered while employed or retained by the County.

The motion to disqualify counsel is fully briefed and ripe for disposition. We held oral argument on the motion on February 5, 2013, during which Kaleta's counsel addressed the court directly in order to respond to, and thoroughly deny, the defendants' allegations and suspicions regarding the nature of their past representation of Northumberland County and County Commissioner Vincent Clausi, and the impact of that representation upon the claims at issue in this case. Upon consideration of the briefs, the affidavits submitted in support of the motion, the parties' respective arguments, and counsel's representations to the court regarding

their past representation and its relationship to the instant litigation, the defendants'
motion to disqualify will be denied.

### B. Counsel's Professional Relationship With Northumberland County

The plaintiff is represented in this litigation by two lawyers, Kymberly L. Best
and Timothy A. Bowers. Ms. Best currently maintains a law practice in Sunbury,
Pennsylvania, and Mr. Bowers has a separate law practice in Danville, Pennsylvania.
Previously, both of these lawyers worked in different capacities for Northumberland
County.

On or around September 15, 2009, Ms. Best began her employment with the
County as an Assistant Solicitor. Subsequently, Ms. Best was also employed in the
capacity as Chief Clerk, and she continued to work in both of these roles until March
18, 2011, when her employment with Northumberland County ceased.

Mr. Bowers was hired as County Solicitor on April 29, 2010. He left this
position just a little over four months later on September 3, 2010, in order to run,
unsuccessfully, for local public office. Following the termination of his brief
employment with Northumberland County, Bowers continued to be retained by the
County as outside counsel in certain ongoing legal engagements, including a
condemnation proceeding involving a 32-acre parcel of land situated within the 6,500
acres that comprise the AOAA site. Additionally, Bowers continued to assist the

County in connection with two real estate tax assessment appeals in other parts of the County, and in litigation involving certain Sheriff's deputies. Lastly, Bowers represented that he was tasked with speaking for the County at a single public meeting regarding the County's authority to impose use restrictions within the AOAA.

The defendants now contend that Bowers and Best should be disqualified from representing the plaintiff, David Kaleta, on the grounds that these lawyers' past professional relationship with the County gives rise to a substantial conflict of interest that compels disqualification. The defendants have provided affidavits from certain County officials in support for the defendants' assertion that the nature of the legal representation that Best and Bowers provided to the County or its commissioners or employees one or more years prior to the initiation of this lawsuit now requires disqualification. None of these affiants attended the hearing on the motion.

In addition, the defendants rely largely on suggestion that during counsel's legal service to the County, they must have become privy to confidential information that alone should warrant disqualification; in addition, the defendants assert that Best and Bowers are now attacking the very policies that they helped to formulate with respect to the creation and use of the AOAA. The defendants thus insist that disqualification of counsel is compelled because their representation of Kaleta in this

action, against counsel's former clients, is "substantially related" to counsel's past representation of the County and its Commissioners.

In response, during the hearing held on the motion, Best and Bowers responded directly to questioning from the court, and to arguments of opposing counsel, in unequivocally denying that their past representation created an impermissible conflict; clarifying that their past representation of the County and Clausi was entirely distinct from the instant dispute involving Kaleta; and in assuring the court that nothing that the lawyers may have learned during their past representation of Northumberland County or Clausi gives rise to a conflict, or caused the lawyers to become privy to confidential information that could be used to the detriment of their past clients in this lawsuit.

## III. <u>DISCUSSION</u>

### A. Applicable Pennsylvania Rules of Professional Conduct

As grounds for disqualification, the defendants rely upon Rules 1.6, 1.9, and 1.11 of the Pennsylvania Rules of Professional Conduct.[1] We begin by summarizing the scope of each of these rules, although as we discuss below, only one of these rules is really implicated by the defendants' motion.

---

[1] Pursuant to Local Rule 83.23.2, the Middle District of Pennsylvania has adopted the Pennsylvania Rules of Professional Conduct with the exception of Rule 3.10.

Rule 1.6 concerns a lawyer's duty to maintain client confidences, even after the termination of the client-lawyer relationship, except as provided by certain enumerated exceptions specifically set forth in the rule. Pa. R. Prof. Conduct 1.6. Although the defendants cite to this rule in their moving papers, there has been no allegation that counsel has actually violated this rule, or that the defendants have good cause to believe that the plaintiff's lawyers will or are likely to reveal client confidences in the course of this litigation. For their part, Best and Bowers stated in open court that they are cognizant of their professional obligation to maintain client confidences, and that they took this obligation seriously. We thus find no real basis to examine this rule as providing support for the defendants' motion, and the defendants would appear to be referring to this rule largely to underscore the overarching concerns that animate the reasons for their disqualification motion.

Rule 1.11, in turn, addresses a number of special conflicts of interest for former and current government officers and employees. The rule prohibits a lawyer who formerly served as a government employee or officer from representing a private client "in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee" unless the appropriate government agency consents to the representation. Pa. R. Prof. Conduct 1.11.

As with Rule 1.6, the defendants do not appear to rely substantially upon this rule as providing a standalone basis for disqualification. Upon consideration, we also find insufficient support to conclude that this rule would compel counsel's disqualification, since the claims in this case involve decisions that allegedly were made to restrict Kaleta's access to the AOAA in August 2012, and which were made long after counsel had left the employment of the County. Other than the defendants' suggestion, there is no basis at this point for the court to find that any legal or professional service rendered to the County implicated the policies or considerations that went into the decision in August 2012 to deny Kaleta access to the AOAA, when he had previously been granted broad access to the land in 2011 – also after both Best and Bowers had left employment with the County. There thus appears no basis to find that either Best or Bowers "participated personally or substantially as a public officer or employee" in the County's decision in 2012 to deny Kaleta's request to use the AOAA. In any event, the defendants do not make a substantial or compelling argument that Rule 1.11, on its own, compels disqualification under the facts of this case.

Rule 1.9, in contrast, is the rule upon which the defendants principally base their motion, and is the rule that requires more thorough consideration. Rule 1.9 prohibits a lawyer from representing a client on a matter that is substantially related

to representation of a former client, where the current client's interests are materially adverse to the interests of the former client, unless the client gives informed consent. Pa. R. Prof. Conduct 1.9(a). Additionally, this rule prohibits a lawyer who has formerly represented a client in a matter from using information relating to the representation to the disadvantage of the former client, except as permitted by the rules. Id. As the rule itself suggests, and as the parties acknowledge, many controversies arising under this rule of professional conduct turn upon whether the matter in which counsel are engaged against a former client is "substantially related" to the representation of the former client. It is this aspect of the rule that requires the most careful assessment in resolving the pending motion.

### B. Application of the Rules to Best's and Bowers's Representation of Kaleta in this Action

It is well settled that one of the inherent powers of any federal courts is the supervision of the lawyers who practice before it. See In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 161 (3d Cir. 1984); Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1203 (E.D. Pa. 1992). As the Eastern District of Pennsylvania court observed in Graphix Hot Line, "[c]ourts have vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interests, and protecting

confidential communications between attorneys and their clients." Id. As part of their responsibility and authority to protect these interests, courts are empowered to disqualify lawyers from representing particular clients, if warranted. Id.; Henry v. Delaware River Joint Toll Bridge Comm'n, No. CIV. A. 00-6415, 2001 WL 1003224, at *1 (E.D. Pa. Aug. 24, 2001). It should be underscored, however, that "even if a court finds that counsel violated the Pennsylvania Rules of Professional Conduct, disqualification is not mandatory." AgSaver LLC v. FMC Corp., No. CIV. A. 11-997, 2011 WL 2274178, at *3 (E.D. Pa. June 9, 2011) (citing Jordan v. Phila. Housing Auth., 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004)). In this regard, the Third Circuit has cautioned that a court:

> should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of her choice and enabling attorneys to practice without excessive restrictions.

United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980). In consideration of this cautionary instruction, district courts should remain mindful that a party's "choice of counsel is entitled to substantial deference." Hamilton v. Merrill Lynch, 645 F. Supp. 60, 61 (E.D. Pa. 1986).

In addition, "the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes." Id. Because "[d]isqualification is a harsh measure, . . . 'motions to disqualify opposing counsel generally are not favored.'" Graphix Hot Line, 808 F. Supp. at 1203 (quoting Hamilton, 645 F. Supp. at 61). "To disqualify opposing counsel, the moving party must clearly show that continued representation would be impermissible." Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Castellano, No. CIV. A. 03-6903, 2005 WL 856928, at *2 (E.D. Pa. Apr. 12, 2005) (citing Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)); see also James v. Teleflex, Inc., No. CIV. A. 97-1206, 1999 WL 98559, at *3 (E.D. Pa. Feb. 24, 1999) (party moving for disqualification bears the burden of showing that the representation is impermissible). On the other hand, some courts have concluded that where a court has doubts regarding the existence of an ethical rule violation, they should be construed in favor of disqualification. AgSaver LLC, No. CIV. A., 11-997, 2011 WL 2274178, at *3.

In this case, the rule most clearly applicable to the alleged conflict of interest is Rule 1.9, which governs, in part, the scope of a lawyer's duty to a former client. The rule, in its entirety, provides specifically as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which

that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

unless the former client gives informed consent.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Pa. R. Prof. Conduct 1.9. "Disqualification under Rule 1.9(a) is required if (1) the former representation is the same or substantially related to the present matter, (2) the interests of counsel's current client are materially adverse to the interests of the

14

former client, and (3) the former client has not consented." Jordan, 337 F. Supp. 2d at 672.

In this case, as in many others like it, the second and third of these elements are not in dispute. The defendants in this case include Northumberland County and Vincent Clausi, both of whom are former clients of Best and Bowers, who are being sued by David Kaleta in this litigation. "There is no situation more 'materially adverse' than when a lawyer's former client is in a suit against that lawyer's current client." Id. In addition, the County and Clausi have made clear that they do not consent to Best's and Bowers's representation of Kaleta in this matter. Thus, these two elements are clearly met in this case.

Accordingly, we limit our analysis to the first factor: whether counsel's representation of Kaleta in this lawsuit is the same as, or substantially related to, a matter in which Best and Bowers represented the County and Clausi. As we consider this matter, we are mindful that the "mere fact that two representations involve similar or related facts is not, in itself, sufficient to warrant a finding of a substantial relationship." AgSaver LLC, No. CIV. A. 11-997, 2011 WL 2274178, at *4; INA Underwriters Ins. Co. v. Nalibotsky, 594 F. Supp. 1199, 1206 n.5 (E.D. Pa. 1984). Instead, courts focus on whether "information acquired by the attorney in his former representation is substantially related to the subject matter of the subsequent

representation." AgSaver LLC, No. CIV. A,11-997, 2011 WL 2274178, at *4; Graphix Hot Line, 808 F. Supp. at 1204. Thus, two matters may be considered to be "substantially related" if, after examining the nature of the two representations, "in the course of the prior representation, the client might have disclosed to its attorney confidences which could be relevant or possibly detrimental to the former client in the present action." Henry, No. CIV. A. 00-6415, 2001 WL 1003224, at *1; see also Graphix Hot Line, 808 F. Supp. at 1204.

Other courts from within the Third Circuit have analyzed this relevant inquiry by asking a set of three guiding questions:

1.    What is the nature and scope of the prior representation at issue?

2.    What is the nature of the present lawsuit against the former client?

3.    In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?

AgSaver LLC, No. CIV. A,11-997, 2011 WL 2274178, at *4; see also Henry, No. CIV. A. 00-6415, 2001 WL 1003224, at *2; Graphix Hot Line, 808 F. Supp. at 1204. The district court in AgSaver summarized the manner in which courts have evaluated each of these three questions:

> In answering the first question, the court should focus upon
> the reasons for the retention of counsel and the tasks which

the attorney was employed to perform. With respect to the second question, the court should evaluate the issues raised in the present litigation and the underlying facts. Finally, in answering the third question, the court should be guided by the interpretation of the word "might." Courts have defined the word "might" to mean either when (a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship.

AgSaver LLC, No. CIV. A,11-997, 2011 WL 2274178, at *4 (internal quotation marks and citations omitted). We likewise will consider these three inquiries separately below.

## 1. The Nature and Scope of the Prior Representation

The parties take quite divergent views with respect to the nature and scope of Best's and Bowers's prior legal representation of the County and its Commissioners. The defendants suggest that these lawyers were directly and substantially involved in providing legal advice to the defendants about the very subject of this litigation, which the defendants characterize broadly as being about the AOAA in general and the public's right to use this land as a public forum.

The plaintiff's counsel, on the other hand, take a far narrower and more discrete view of their former representation of the defendants and their involvement in the early stages of development of the AOAA. Plaintiff's counsel argues that the instant

lawsuit is not about the creation of the AOAA, or even about policies governing that as of yet incomplete municipal project, but is instead narrowly about the County's decision in August, 2012, to prohibit a single resident, David Kaleta, from using the AOAA at all, and doing so in a way that violated the Sunshine Act's requirements and the First Amendment. Plaintiff's counsel thus maintains that this matter simply cannot be substantially related to their past legal work for the County, even if that work touched in some way upon the AOAA's creation or the County's development of policies governing its use.

Upon careful consideration of these competing arguments, we agree with the plaintiff that the issues implicated in this lawsuit are substantially different and distinct from those on which Best and Bowers worked in their past representation of the County and its Commissioners. In this regard, we likewise do not agree with the defendants' general suggestion that because these lawyers were involved, in the past, in early-stage discussions about the AOAA project, and even in counseling the County about lawful limitations that might be imposed on its use, that this past representation is substantially related to what we see as narrow and distinct issues presented in this case. The plaintiff is not bringing sweeping or broad challenges to the AOAA project, or even regarding the public's use of this land generally; instead, he has challenged the County's decision, allegedly made privately in August 2012 by

two County Commissioners, to flatly deny his request to access the AOAA, in a manner that he contends violates the Sunshine Act and the First Amendment.

In considering the nature and scope of counsel's prior representation, we find that the defendants have offered relatively little to support their assertions regarding not only the nature of the former representation, but more importantly to link that prior representation meaningfully with the issues presented in the instant litigation.

The defendants have identified several matters on which Best and Bowers worked in their past capacities as lawyers or administrative officials employed by the County, and the defendants have also generally averred that the legal work these lawyers performed was under the direction of the Commissioners. Thus, the defendants note that Kymberly Best defended the County in a variety of litigation, including at least one civil action naming both the County and Commissioner Clausi, though it appears this litigation had nothing at all to do with David Kaleta, or even with the AOAA, much less with respect to any decision to deny Kaleta access to this land.

Additionally, the defendants point out that in her capacity as Chief Clerk for the County, Ms. Best "performed a variety of administrative functions directly under the control of the Commissioners," including the management and implementation of unspecified policies and programs that were "decided upon by the

Commissioners," and in serving as an advisor to the Commissioners generally. (Doc. 18, at 3.)

In further general fashion, the defendants assert that Best and Bowers were "deeply involved" in handling lawsuits brought against the County and its Commissioners, and in so doing assertedly "learned . . . the manner in which the County handles claims upon receipt, investigates those claims, and proceeds to litigate disputes. More pertinently, the two were privy to the manner in which the County engages in settlement of lawsuits." (Id.)

In addition to these general observations regarding the past professional role that each of these lawyers played for the County, the defendants pointedly focus their argument on work that these lawyers performed for the County relating to the creation of the AOAA, which the defendants characterize as "the subject of the instant law suit." (Id.) Offering that specific instances of Best's and Bowers's representation of the County with respect to the AOAA as "too numerous to set forth", the defendants nonetheless summarize this representation as including internal discussions regarding the project "in many forums, on numerous occasions" including in responding to citizen concerns and questions about the proposed project at public meetings and elsewhere, and even in advising the public that the AOAA land may not be a public forum open to all without restrictions. (Id. at 4.)

Defendants also observe that Ms. Best was involved in the County's decision in August 2010 to terminate the lease of Habitat for Wildlife, an organization in which David Kaleta serves as President. It appears that the County's decision in this regard was not limited to Habitat for Wildlife's lease on the AOAA property, but was instead part of a broader decision by the County not to renew land leases held by any other party or organization involving land within the AOAA property, in light of the County's plans to develop the area. The defendants suggest that the decision not to renew Habitat for Wildlife's lease "forms the basis of the instant litigation," (id. at 5), but we do not perceive this act – which was taken in August 2010, roughly two years before the incidents that actually form the basis for this lawsuit occurred – can reasonably be construed as forming "the basis of the instant litigation."

Defendants have also referred the court to instances where Best or Bowers were involved in, or privy to, meetings or correspondence involving the County, its Commissioners, and Kaleta, among others, regarding the ongoing plans to develop the AOAA. Best and Bowers also appear to have had involvement in these discussions, and in responding to concerned citizens on behalf of the County regarding the AOAA project. Finally, the defendants highlight that Best and Bowers conducted title searches involving the AOAA property, and determined that no restrictive covenants remained on the land and, in the case of Bowers, commenced

eminent domain proceedings on behalf of the County to condemn a plot of land within what would become the AOAA. It does not appear that these condemnation proceedings, or other initial legal research into land use issues relating to the AOAA project, related in any way, either generally or specifically, to David Kaleta.

In sum, we find that this activity by counsel was temporally and topically remote from the issues in the instant lawsuit.

### 2. The Nature of the Present Lawsuit

The next step in our inquiry is to consider the nature of the present lawsuit, in relation to counsel's past representation of the County and Clausi, as summarized in the defendants' moving papers, and in counsel's own representations to the court. In this regard, we note that whereas the defendants identified examples of counsel's past representation of the County and its Commissioners, and referred the court to matters undertaken by Best and Bowers in and around the summer of 2010 regarding the proposals and plans to develop the AOAA, the defendants have done far less to show that this past representation bears directly upon the issues presented in the current lawsuit.

As noted above, although the defendants invite the court to take a sweeping view of counsel's past representation, and regarding the nature of the plaintiff's claims in this case, we find that the defendants' assertions go too far. We

22

acknowledge that the instant lawsuit relates to matters involving the AOAA, and we recognize that the plaintiff's counsel were involved in legal and professional capacities in the County's budding plans to develop this area into a space for outdoor activity. However, we cannot agree with the defendants that the discrete claims presented in this case relate meaningfully to Best's and Bowers's past legal and professional service to the County and its Commissioners generally, or even with respect to the AOAA. Instead, a fair reading of the claims set forth in Kaleta's complaint reveals that the plaintiff's claims do not touch upon the County's decision in 2010 not to renew Habitat for Wildlife's lease, or any other matter that the defendants have highlighted regarding ongoing public and private meetings, and legal actions, taken in furtherance of the AOAA project. Instead, we read the claims in this case to be limited to the plaintiff's challenge to the decision of the County, through two of its Commissioners to deny his request to access the AOAA land – a decision that was allegedly made in private and in contravention of the Sunshine Act and the First Amendment. The fact that the claims involve Kaleta being denied access to the AOAA in August 2012 (after previously being granted access, even after Best and Bowers had left the County's employ) does not cause the claims to have substantial relation to the past legal and administrative work that Best or Bowers may have

performed for the County regarding plans to create and develop the AOAA, or steps taken in furtherance of that objective.

### 3. Client Confidences

Finally, we are to consider whether during the course of counsel's prior representation, the client may have disclosed to Best or Bowers attorney confidences which could be relevant to the present action, and which could thus militate in favor of disqualification. In particular, we consider whether any such confidences could be detrimental to the former clients in the current litigation. Upon consideration, and after hearing from Best and Bowers regarding this matter during oral argument regarding this particular concern, we conclude that there is an insufficient basis to find that these lawyers would have learned of confidences relevant to the specific issues in dispute in this case, and even less basis to believe that any such confidences would be used to the client's detriment.

In support of their motion, the defendants have offered affidavits from three current officials with Northumberland County, (Doc. 11, Exs. 1-3.), but none of the representations made in these affidavits cause us to find that there is a likelihood that client confidences would be disclosed in this case, or used against the former clients. The defendants, and in particular the County's current solicitor, Frank W. Garrigan, have suggested that Best's and Bowers's past representation would have provided

them with knowledge of how the County handles litigation and claims, how it investigates claims, and how the County might settle litigation. The current solicitor thus offers that Best and Bowers, "having participated in the settlements of litigation instituted against the County, are aware of the processes by which the County values such law suits, and the factors which make the County more or less likely to agree to settlement." (Doc. 11, Ex. 2, ¶¶ 18-19.)

Although the defendants may be right that Best and Bowers have some familiarity with the way in which the County processes litigation brought against it, or even how the County has in the past settled lawsuits, we do not believe that this is of such significance that it compels the disqualification of counsel in this case. The same argument could be made about many lawyers who leave the employment of a firm, company, or government agency, and it does not automatically compel disqualification; were it otherwise, this fact would essentially require the disqualification of counsel in all such cases. In this case, other than general assertions of counsel's familiarity with the County's litigation strategy in past cases that would have been resolved one and one-half years or more before the events giving rise to this lawsuit allegedly occurred, there is no compelling showing requiring disqualification.

Similarly, we do not find that the defendants' suggestion – and it really is no more than that – that the plaintiff's counsel might have been privy to confidential communications with Commissioner Clausi or other agents of the County compels disqualification. Significantly, Bowers represented that none of the named defendants ever voiced animus or frustration towards the plaintiff, and Bowers told the court that he could not recall having any discussion with Commissioner Clausi or any other County representative about Kaleta, other than perhaps some reference to Habitat for Wildlife's lease being terminated, along with several other leases, on the AOAA land. (Transcript, at 21-22.) Counsel represented that the friction between the Commissioners and Mr. Kaleta that allegedly led to the County's retaliatory conduct appears to have begun in or around December 2011 during a public meeting about matters having nothing to do directly with the current lawsuit; the defendants did not offer anything substantial to rebut or question this assertion. This meeting occurred long after Best and Bowers ceased working for the County, and we do not embrace the defendants' mere suggestion that the potential that Best or Bowers may have had confidential communications with the Commissioners or County agents regarding Kaleta requires disqualification.[2]

---

[2] Although we do not mean to imply that it would have altered our analysis in this matter, we note that Commissioner Clausi has not offered an affidavit or any other declaration to state that he had confidential communications with Best or

In summary, we do not find that the Pennsylvania Rules of Professional Conduct compel or warrant the disqualification of the plaintiff's counsel in this case. Specifically with respect to Rule 1.9, we do not find that counsel's representation of David Kaleta in the discrete claims brought against the County and two of its Commissioners in this litigation is the same as, or substantially related to, a matter in which Best and Bowers represented the County or any of its Commissioners while previously employed or retained by the defendants. The motion to disqualify counsel will, therefore, be denied.

## IV. <u>ORDER</u>

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT the defendants' motion to disqualify attorneys Kymberly L. Best and David Bowers (Doc. 10.) is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

---

Bowers about matters directly relevant to this litigation. Likewise, Commissioner Bridy did not submit such an affidavit, but this is unsurprising since he did not assume office until after Best and Bowers had left employment with the County.