# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID F. KALETA,** | : | Civil No. 4:12-CV-1987 |
| | : | |
| **Plaintiff** | : | **(Judge Brann)** |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **VINNY CLAUSI,** | : | |
| **STEPHEN BRIDY and** | : | |
| **COUNTY OF** | : | |
| **NORTHUMBERLAND,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

**I.     INTRODUCTION**

Now pending in this action is the defendants' motion to dismiss the plaintiff's amended complaint. For the reasons that follow, it is recommended that the motion be denied.

**II.    BACKGROUND AND STATEMENT OF THE CASE**

**A.     Overview of the Plaintiff's Claims in this Litigation**

The plaintiff in this action, David Kaleta, initiated the above-captioned litigation against Northumberland County (the "County") and two of its Commissioners, Vincent Clausi and Stephen Bridy, on September 17, 2012, in the Northumberland County Court of Common Pleas. After the plaintiff prevailed on a

motion for preliminary injunctive relief before the Court of Common Pleas, which effectively permits the plaintiff to use the AOAA property, the defendants retained new counsel, who on October 3, 2012, promptly moved to remove the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1331. (Doc. 1.)

In a nutshell, the plaintiff's complaint alleges that the defendants violated the First Amendment of the United States Constitution, and Pennsylvania's Sunshine Act, when they flatly denied his request to access a 6,500 acre area known as the Anthracite Outdoor Adventure Area ("AOAA"), which the County Commissioners are in the process of developing into a recreational park. The AOAA is an area of land that has been used for years by off-road vehicle enthusiasts and other individuals, after being largely abandoned by the coal mining industry. The plaintiff has been actively involved for more than a decade in efforts to enhance the area environmentally, through planting over 40,000 trees, and working to develop wildlife habitats. The plaintiff has received public recognition and commendation for his efforts, including being granted a statewide award. During this time, the plaintiff appears also to have regularly accessed the land that makes up the AOAA.

In July 2011, the plaintiff executed a waiver of liability form that was requested by the County's Planning Department head, Patrick Mack, in order to lawfully access the AOAA. After signing this waiver, the plaintiff continued regularly to access the

AOAA land, while at the same time he became increasingly vocal and critical in various forums about the approach that the County was taking with respect to the development of the AOAA. According to Mack, the plaintiff's public statements created a tense relationship between the plaintiff and the County, and with the Chairman of the Board of Commissioners, Vinny Clausi.

The following summer, in August 2012, it appears that these tensions between the plaintiff and some County representatives came to a head. During this time, the plaintiff submitted another waiver form for individual access to the AOAA, which was provided to Patrick Mack. Mack consulted with Commissioner Clausi about the plaintiff's request to access the AOAA, and the decision was thereafter made to deny the plaintiff's request. A letter from Mack to the plaintiff represented that two of the County's three Commissioners had decided not to accept the plaintiff's waiver, thereby effectively preventing the plaintiff from accessing and using the AOAA, as he had done previously.

The plaintiff claims in this lawsuit that the County's decision entirely to deny his request to access the AOAA, through two of its Commissioners, in private, violated Pennsylvania's Sunshine Act, 65 Pa. Cons. Stat. Ann. §§ 701 et seq., which generally guarantees the right of the public to be present at meetings of government agencies, and "to witness the deliberation, policy formulation and decisionmaking of

3

agencies" which is deemed "vital to the enhancement and proper functioning of the democratic process . . . ." 65 Pa. Cons. Stat. Ann. § 702(a). The Act further establishes the public policy of the Commonwealth to ensure the right of citizens to have notice of and the right to attend meetings of agencies at which agency business is discussed or acted upon. *Id.* § 702(b). In order to implement these overarching policies, the Act requires that "[o]fficial actions and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public . . . ." *Id.* § 704. In this case, the plaintiff contends that the defendants violated the Sunshine Act by undertaking official County action or business – namely, considering and denying his request for access to the AOAA – in private and outside of a public meeting.

The plaintiff also claims that the County's actions, through two of its three Commissioners, constituted violations of the First Amendment, both as a prior restraint on public speech, and as retaliation for the plaintiff's exercise of protected First Amendment activity through his public criticism of the Commissioners.

Now pending in this action is the defendants' motion to dismiss the plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that although a state court has already found the plaintiff likely to prevail on the merits of his claims, that the complaint nevertheless actually fails to state a claim upon which relief can be granted. We disagree, and find that the plaintiff has

4

adequately pleaded claims for relief under both the Sunshine Act and for alleged violations of the First Amendment with respect to the County's decision to deny his request to access the AOAA lands in August 2012.

Moreover, we find that the defendant is really attempting to do is move the court to enter summary judgment in its favor rather than arguing that dismissal is appropriate on the amended complaint itself. In this regard, we note that the defendants rely almost exclusively on evidence that was taken before the state court during a hearing held on the plaintiff's motion for a preliminary injunction on which the plaintiff actually prevailed; but now, before this court, the defendants argue that the same evidence taken by the state court should actually result in the preliminary dismissal of the plaintiff's claims.

In sum, given the unusual factual posture of this case, where defendants' motion relies upon what was contested evidence at a preliminary injunction hearing, evidence which convinced a state court to issue an injunction in favor of the plaintiff, notwithstanding suggestions in the defendants' motion to the contrary, we find that whether summary judgment ultimately may be appropriate in this case is not properly before the court at this juncture. Furthermore, we find that the defendants err in their assertion that evidence taken during a hearing on the plaintiff's successful motion for

a preliminary injunction should form the predicate for granting the defendants' motion to dismiss pursuant to Rule12(b)(6).

In our consideration of the motion to dismiss under the familiar standards applicable to motions brought pursuant to Rule 12(b)(6), we are confined to considering whether the facts alleged in the complaint plausibly state a claim upon which relief can be granted. Limited in this way, we decline the defendants' invitation to evaluate the evidence taken at another judicial proceeding in this action, and to rely upon such plainly disputed evidence to recommend that the District Court rule in the defendants' favor on a motion that tests the legal sufficiency of the pleading itself.[1] For the reasons discussed briefly below, we find that the plaintiff's amended complaint adequately pleads facts to support claims for violations of the

---

[1] We further note that, at a hearing held before this court on a separate motion that the defendants filed seeking to disqualify the plaintiff's counsel, counsel for the defendants represented to the court that they viewed the case as being "at the beginning" and observed that the parties "haven't engaged in discovery". (February 5, 2013 Transcript, at 40.) After the court noted that the plaintiffs appeared to be arguing the case was virtually ready for trial, the defendants' counsel responded that "certainly defendants are not, and [] will be taking numerous depositions and engaging in extensive written discovery." (*Id.* at 40-41.) Counsel additionally stated that "[w]e do not feel that we're ready to go." (*Id.* at 41.) And yet in the current motion, it is the defendants who urge the court to dismiss the claims against them, not so much on the grounds that the pleadings do not articulate a cognizable claim, but because the evidence taken during a preliminary hearing on a motion for injunctive relief allegedly entitles the defendants to judgment as a matter of law – even though the plaintiff prevailed on his motion for preliminary injunctive relief.

Sunshine Act and the First Amendment. Accordingly, we will recommend that the motion to dismiss be denied. Defendants' arguments in favor of judgment as a matter of law rely upon consideration of evidence and matters outside of the pleadings and, as such, should be reserved for a properly supported motion for summary judgment if the defendants believe such a motion is warranted following the completion of discovery.[2]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is

---

[2] Although the defendants' motion is clearly captioned as a motion to dismiss pursuant to Rule 12(b)(6), and although the defendants recite the legal standards governing motions to dismiss in federal court, they also suggest that they are alternatively requesting that summary judgment be entered in their favor. We recommend that the court decline to grant summary judgment at this stage of the litigation, since the defendants themselves have represented that they intend to undertake extensive discovery in this case, and because we believe that it would be inappropriate to enter judgment as a matter of law in favor of the defendants based solely upon evidence taken during a hearing before the Court of Common Pleas of Northumberland County during a proceeding the resulted in a ruling in favor of the plaintiffs. We likewise recommend that the court decline the plaintiff's alternative argument, set forth solely in a brief, that the court should not only deny the defendants' motion, but should go further and enter judgment in the plaintiff's favor.

appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. *Id.* at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than label and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting *Twombly*, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose

contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also, U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgement."). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien &Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**IV. <u>DISCUSSION</u>**

    **A.    The Sunshine Act**

The Pennsylvania General Assembly enacted the Sunshine Act in order to "provide citizens with an opportunity to observe the deliberation, policy formulation and decision-making processes of public agencies." *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011) (quoting *Lee Publ'ns, Inc., v. Dickinson Sch. of Law*, 848 A.2d 178, 180 n.2 (Pa. Commw. Ct. 2004) (citing 65 Pa. Cons. Stat. Ann. § 702 (West 2000)). The Sunshine Act requires that: (1) [o]fficial action and deliberations by a quorum of the members of an agency . . . take place at a meeting open to the public;" (2) "the vote of each member who actually votes on any . . . ordinance. . . must be

9

publicly cast . . .;" (3) minutes must be kept of agency meetings; and (4) public notice be given in advance of the meeting in a manner directed by the Act. *Id.* (citing 65 Pa. Cons. Stat. Ann. §§ 704, 705, 706, 709 (West 2000)). The Act also provides that business transacted at unauthorized meetings is void. 65 Cons. Stat. Ann. § 713. Additionally, the Act provides for a private right of action. 65 Pa. Cons. Stat. Ann. § 715.

Section 704 of the Sunshine Act further provides definitions of key words contained in the Act, including:

"Agency business." The framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including administrative action.
\*\*\*
"Deliberation." The discussion of agency business held for the purpose of making a decision.
\*\*\*
"Executive session." A meeting from which the public is excluded, although the agency may admit those persons necessary to carry out the purpose of the meeting.

"Litigation." Any pending, proposed or current action or matter subject to appeal before a court of law or administrative adjudicative body, the decision of which may be appealed to a court of law.

"Meeting." Any prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action.

"Official Action."

> (1) Recommendations made by an agency pursuant to statute, ordinance or executive order.
> (2) The establishment of policy by an agency.
> (3) The decisions on agency business made by an agency.
> (4) The vote taken by an agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa. Cons. Stat. Ann. § 703; *see also Smith v. Twp. of Richmond*, 54 A.3d 404, 409 (Pa. Commw. Ct. 2012).

In this case, the plaintiff has alleged that the County's decision in September 2012 to deny his request to access the AOAA land violated the Sunshine Act. In support of this claim, the plaintiff has alleged that he obtained a waiver form from the County for use of land utilized by the County fo the AOAA project. (Doc. 8, Am. Compl., ¶ 5.) The plaintiff further avers that in a letter dated September 10, 2012, from County Director of Planning and Industrial Development, Patrick A. Mack, he was advised that "[t]wo of three members of the Board of Commissioners have considered, and ultimately decided to deny your request." (*Id.* ¶ 7.) Additionally, the plaintiff notes that on September 14, 2012, the Shamokin News Item, a local newspaper, reported that defendants Clausi and Bridy "voted to deny Kaleta access to the land." (*Id.* ¶ 8.) The plaintiff alleges that his request to access the AOAA land was required to be, but never was, deliberated by the Commissioners in an open

meeting, and there was no notice of any such meeting advertised in a newspaper of general circulation in Northumberland County, and there was thus no opportunity for public comment on the plaintiff's request. (*Id.* ¶¶ 10-12.) Likewise, the plaintiff asserts that the County has established a policy of requiring users of the AOAA lands to sign waivers, and restricting use to groups and events. (*Id.* ¶ 13.) The plaintiff further claims that the County's alleged policy of requiring users of the AOAA lands to sign waivers and restricting use to groups and events was never deliberated by the Commissioners in an open meeting, and no notice of such a meeting was ever publicized. (*Id.* ¶¶ 14-16.)

The defendants do not so much argue that the plaintiff's factual allegations are insufficient to state a claim for violations of the Sunshine Act, but instead they maintain that the "undisputed facts of record" taken during the hearing on a preliminary injunction in state court demonstrate as a matter of law that there was no violation of the Sunshine Act in this case. (Doc. 19, at 8.) The defendants next cite to several decisions addressing exceptions to the Sunshine Act's rules regarding public deliberation and notice, and then assert that "review of the record conclusively shows that no Sunshine Act violation occurred because no 'official action' by an agency, i.e. Northumberland County, occurred when the Planning Department denied plaintiff's waiver request." (*Id.* at 9.) The defendants thus argue that, as a matter of

established fact, the County's Planning Department is the party that made the decision to deny the plaintiff access to the AOAA, and because the Planning Department is not an agency subject to the Sunshine Act, there can be no violation of the Act as a matter of law. The defendants argue that there are undisputed facts that show that the Planning Department was given authority in 2011 during a public meeting to grant permits for events on County owned property, and this allegedly undisputed fact further supports the defendants' motion to dismiss the plaintiff's Sunshine Act claim.

For his part, the plaintiff similarly resorts to argument about "evidence of adduced of record" establishing a Sunshine Act violation in this case, but otherwise says little about the sufficiency of the amended complaint itself. (Doc. 22, at 12.)

As the plaintiff notes in his brief, the Pennsylvania Commonwealth Court has recently observed that "Sunshine Act cases are fact intensive. It is the plaintiff's burden to prove that official action was taken or that 'deliberations' took place at a private meeting." *Smith v. Twp. of Richmond*, 54 A.3d 404, 411 (Pa. Commw. Ct. 2012). We are mindful that such cases are "fact intensive," and we find that the defendants and the plaintiff err in their assertions that the "facts" developed during a hearing before the Court of Common Pleas for Northumberland County either establish that no Sunshine Act violation occurred in this case, or alternatively compel the court to enter judgment in the plaintiff's favor at the outset of this action.

Although the defendants suggest that they are entitled to summary judgment in the alternative to dismissal, their motion clearly is focused on dismissal of the plaintiff's claims on the asserted insufficiency of the amended complaint alone, but they offer nothing to show that the allegations themselves are inadequate, other than to argue about the quality of the facts that have been adduced at the outset of this case.

Having been assigned to manage pre-trial matters in this action, we are also aware that the parties have been engaged in fact discovery since the action was removed to this court, and thus are particularly cautious regarding each of the party's arguments that rely entirely on evidence developed during a preliminary hearing before another court. Finding that the plaintiff's straightforward factual allegations are sufficient at least to state a claim for a violation of the Sunshine Act; mindful that claims under the Sunshine Act are factually intensive; and recognizing that the parties have been engaging in ongoing discovery relating to the claims in this matter that may bear upon the resolution of the claims in this case whether on later dispositive motions or at trial, we will recommend that the defendants' motion be denied with respect to the plaintiff's Sunshine Act claim.

**B.** **First Amendment - Prior Restraint**

The defendants also move the court to dismiss the plaintiff's claim that the County's decision to deny his request to access the AOAA lands constituted a prior

14

restraint violation of the First Amendment. As with their arguments regarding the Sunshine Act claim, the defendants do not persuasively argue that the plaintiff's amended complaint is itself inadequate to state a claim; instead they contend that the prior restraint claim "must be dismissed as a matter of law" because the AOAA lands are not a public forum. In this regard, the defendants assert that the "AOAA property is unequivocally a non-traditional forum because it is not open to the public without an approved waiver and is not, and has never been, designated as a place used for public assembly." (Doc. 19, at 15.) The defendants' argument continues by focusing on the County's alleged policy of requiring waivers before granting access to the AOAA lands, asserting that "such requirements are merely restrictions to go onto the property. Even assuming, *arguendo*, that such requirements amount to restrictions on speech, it is undisputed that they are reasonable in that they absolve the County of any liability for any injury that the individual may suffer on the property." (*Id.* at 16.) Thus, the defendants continue to predicate their argument on what they contend are "undisputed" factual issues – when it is clear that disputed factual issues remain, including the plaintiff's argument that a complete ban on his access to the property is an unreasonable prior restraint.

A brief overview of the prevailing law in this field makes it clear that this claim is not capable of being resolved on the complaint alone.

"When a First Amendment free speech challenge arises from a restriction on speech on government owned or controlled property . . . the classification of the forum determines the contours of the First Amendment rights that a court recognizes when reviewing the challenged governmental action." *Galena v. Leone*, 638 F.3d 186, 197 (3d Cir. 2011). In general in this setting, courts recognize three primary types of public forums, each with different implications with respect to the government's ability to restrict expression within such forums: (1) the traditional public forum; (2) the designated public forum; and (3) the limited public forum. *Id.* Traditional public forums include public streets, parks, and other public areas traditionally devoted to assembly and debate. *Id.* at 198 (citation omitted). A designated public forum is established when a government entity intentionally designates property that traditionally has not been regarded as a public forum for use as a public forum. *Id.* With respect to both of these recognized types of public forums, the government may enact reasonable time, place, and manner restrictions on speech, but any restrictions on the content of speech must be tailored narrowly to serve a compelling governmental interest. *Id.* (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)). The First Amendment prohibits a government from restricting access to these kind of public forums based on a speaker's viewpoint. *Id.*

In contrast, a governmental entity creates a limited public forum when it provides for "a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Id.* In these types of public forums, "to avoid infringing on First Amendment rights, the governmental regulation of speech only need be viewpoint-neutral and 'reasonable in light of the purpose served by the forum[.]'" *Id.* (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001)).

Furthermore, even if government-owned property is found to be a nonpublic forum, it does not follow that a government entity may, in all cases, entirely prevent the public from accessing the property in order to engage in public expression. *McTernan v. City of York*, 577 F.3d 521, 528 (3d Cir. 2009). Instead, "[t]he Government, even when acting in its proprietary capacity, does not enjoy absolute freedom from First Amendment constraints, as does a private business, but its action is valid in these circumstances unless it is unreasonable, or, . . . 'arbitrary, capricious, or invidious.'" *United States v. Kokinda*, 497 U.S. 720, 725-26 (1990) (quoting *Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974)). In such cases, regulations restricting expression on nonpublic forums "must be reasonable, and 'not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* at 730 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460

U.S. 37, 46 (1983)). Thus, the touchstone for whether the government's decision to restrict access to a nonpublic forum is lawful under the First Amendment is reasonableness. *Id.*

As the foregoing makes clear, determination on whether the AOAA is a public forum and, if so, what kind of public forum, is factually dependent, and not properly suited for resolution on the pleadings. Accordingly, we recommend that the court decline the defendants' invitation to find that the AOAA is "unequivocally a non-traditional forum", (Doc. 19, at 15.), or to make legal conclusions regarding the purpose and nature of the restrictions imposed on the plaintiff's request to access the AOAA in 2012, which the County denied after having previously granted the plaintiff access to this property. Even if the AOAA lands are ultimately found to be a nonpublic forum, the plaintiff's claim that the County's decision entirely to prevent him from accessing the AOAA was unreasonable is itself factually dependent.

Moreover, and apart from the proper scope of our review on a motion to dismiss, review of the parties' briefs demonstrates that the parties do, in fact, dispute the facts relevant to these legal determinations. Although it may be that one or more of the plaintiff's claims could ultimately be subject to preliminary disposition through motions for summary judgment, we do not find that the briefs and factual record as currently developed permit such resolution at this stage of the proceedings.

Accordingly, we will recommend that the defendants' motion to dismiss the amended complaint be denied. If the court adopts this recommended disposition, neither the plaintiff nor the defendants will be prejudiced in the right to file additional dispositive motions in this case based upon all of the relevant evidence developed during discovery, which will allow the court to make a more fully informed decision as to whether the plaintiff's claims admit of preliminary disposition, or if trial on these claims is necessary.

## V. **RECOMMENDATION**

Accordingly, for the foregoing reasons, it is RECOMMENDED the defendants' motion to dismiss the plaintiff's amended complaint (Doc. 12.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days of being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where

19

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                            ***/s/ Martin C. Carlson***
                                            Martin C. Carlson
                                            United States Magistrate Judge

Dated: May 6, 2013